UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT HOFFMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF THE SOUTHWEST,<br><br>    Defendant. | Case No.  23-cv-04068-PCP<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS AND RESOLVING REQUESTS FOR JUDICIAL NOTICE**<br><br>Re: Dkt. No. 37, 39, and 62 |

In this putative class action, eleven California public school teachers assert that defendant Life Insurance Company of the Southwest (LICS) charged them undisclosed fees for deferred indexed annuity plans in violation of the California Education Code and Unfair Competition Law. For the reasons that follow, LICS's motion to dismiss the teachers' claim is granted in part.

**I.  Background**

The following allegations from the complaint are taken as true in resolving this motion.

An annuity plan is a contract, typically with an insurance company. The customer pays a premium at the outset and in exchange the company promises regular payments for a set period of time. The payments might end either on a fixed date or when the customer dies. In an immediate annuity, the payments start right away. In a deferred annuity, the payments start at a later date the customer picks. Until then, the customer can withdraw their upfront payment and close their account (though there might be a fee for doing so). And until the deferred payments start, the premiums paid to the insurance company by the customer accumulate interest.

There are different ways to calculate the interest rate earned by a deferred annuity. For an "indexed" annuity, the annuity provider pays an interest rate that is tied to the performance of a market index like the S&P 500 or Dow Jones Industrial Average. The insurance company does not

necessarily invest the customer's premiums in the specified index. Instead, the company simply promises to pay an interest rate that is determined by the index's performance. The interest rate is thus a matter of contract rather than a reflection of gains directly earned by investing the customers' premiums in the specified index.

The formula tying the interest rate provided to the customer to the performance of the identified index is generally more complicated than a simple 1:1 match. There are several variables that go into the calculation.

The first step is to calculate the return rate of the chosen index. This is done using a "crediting strategy," which includes the index to which returns are tied, the method for measuring its performance, and the time period over which the return is calculated. For example, a crediting strategy might tie returns to the S&P 500 index based on its "point-to-point" returns over a one-year crediting period, comparing the index's value on the first and last days of the one-year period.

Once the index's return rate is calculated, additional parameters are applied to determine the actual interest rate that will ultimately be credited to the customer's annuity. One implicit limit is that, because the annuity payments are accruing interest rather than being directly invested, the interest rate will bottom out at zero even if the index's return rate is negative.

If the index's return is positive, other plan limits often mean that the interest rate applied to the customer's annuity payments is lower than the actual return of the identified index.[1]

One form of limit on the index return rate is a *cap rate*. This is a fixed upper limit on the interest rate. If a cap rate is set at 3%, for example, the ultimate interest rate can be no higher than 3% even if the underlying index's return is 30%.

Another form of limit on the index return rate is a *participation rate*. This is a proportional rather than fixed limit on the interest rate. If a participation rate is set at 30% and the underlying index return is 10%, for example, the interest rate applied to the customer's annuity payments will be 3% (30% of 10%).

---

[1] The complaint refers to these limits as "indirect fees," although it recognizes that LICS calls them "limits." Because a disputed question in this case is whether these parameters are "fees" within the meaning of the statute, this order does not adopt the complaint's terminology.

A final form of limit on the index return rate is a *spread rate*. This is a set percentage amount by which any gain in the index is reduced. If the spread rate is 3% and the underlying index return is 10%, for example, the ultimate interest rate will be 7% (10% – 3%).

After determining the return for the underlying index, an indexed annuity plan might use one or more of these limits to calculate the interest rate that the plan will actually apply to the customer's premiums.

Customers can also choose to add "riders" to their annuity contracts. These riders add additional features, usually for a fee that is deducted from the contract value. For example, riders can give customers more flexibility over when they can withdraw their money without a penalty, change how interest is calculated (by adjusting the crediting strategy or cap, participation, or spread rates discussed above), or adjust how much money can be withdrawn.

Section 403(b) of the federal tax code allows public school teachers contribute earnings to tax-sheltered retirement accounts that can be used to enter annuity contracts. *See* I.R.C. § 403(b). California requires vendors who sell tax-sheltered annuity contracts to California public school teachers under Section 403(b) to register with the California Teachers' Retirement Board. *See* Cal. Educ. Code § 25101. Vendors are required to disclose "all expenses paid directly or indirectly by retirement plan participants, including, but not limited to, penalties for early withdrawals, declining or fixed withdrawal charges, surrender or deposit charges, management fees, and annual fees." *Id.* § 25101(a)(3). The board in turn publishes this information on 403bCompare.com, an online database it is required to maintain. Vendors "may not charge a fee associated with a registered 403(b) product that is not disclosed, pursuant to Section 25101." *Id.* § 25107.

\*   \*   \*

This case involves deferred indexed annuity plans sold by the Life Insurance Company of the Southwest, one of the largest sellers of indexed annuities to California public school teachers. The eleven named plaintiffs in this case are all California public school teachers who purchased annuity products from LICS.

3

Two of the named plaintiffs purchased plans which LICS never registered on 403bCompare.com.[2] Nine of the named plaintiffs purchased plans that LICS did register and list on 403bCompare.[3] These listings specified the cap, spread, and participation rates for the plans. According to plaintiffs, though, the listings are out of date and have not been updated to reflect current rates, which change several times per year. Two of the plaintiffs added riders to their plans (one of which was registered and one which was not) for an additional fee.

After plaintiffs filed this lawsuit in California state court, defendants removed it to this Court. The Court then granted plaintiffs' motion to relate this case administratively to three others involving similar allegations against different insurance companies. Defendants in this case and the other related cases filed motions to dismiss, and the Court held a consolidated hearing on the motions.

## II.    Legal Standards

A complaint that does not state a plausible claim upon which relief can be granted can be dismissed under Federal Rule of Civil Procedure 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions "must be supported by factual allegations." *Id.* at 679. The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009).

There are two exceptions to the general rule that "courts may not consider material outside the pleadings when assessing the sufficiency of a complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). First, Federal Rule of Evidence 201 permits judicial notice of "a fact that is not subject to reasonable dispute" because the fact is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be

---

[2] These plans were the "FIT Income Plus" and "SecurePlus Silver" plans, purchased by Blisten and Strozewski, respectively.
[3] Thes plans were "FIT Rewards Growth" (purchased by Hoffman), "SecurePlus Paramount 5" (Fallas and De Altonaga), "SecurePlus Elite" (Oxx), and "SecurePlus Platinum" (Oxx, Stokes, White, Krimbow, Lui, and Gallagher).

4

questioned." Second, the doctrine of incorporation by reference permits a court to treat an extrinsic document as if it were part of the complaint if the pleading "refers extensively to the document" or if "the document forms the basis" of a claim. *Khoja*, 899 F.3d at 1002. This can be proper "when assessing the sufficiency of a claim requires that the document at issue be reviewed," but is not warranted when "the document merely creates a defense to the well-ple[aded] allegations." *Id.*

### III. Requests for Judicial Notice

#### A. Plaintiffs' Requests (Dkt. No. 62)

Plaintiffs request judicial notice of five documents, including several publications from the California legislature and one page from 403bCompare.com.

##### 1. The Court Takes Notice of the Legislative Documents (Exs. A–C & E)

Plaintiffs request judicial notice of four legislative documents:

- California Assembly Bill 2506 (2002) (Ex. A),
- California Senate Public Employment and Retirement Committee, Analysis of Assembly Bill 2506 (June 24, 2002) (Ex. B),
- California Assembly Bill 2233 (2004) (Ex. C), and
- California Assembly Appropriations Committee, Analysis of A.B. 2506 (May 1, 2002) Ex. E).

These public legislative documents are clearly noticeable and plaintiffs' request is granted.

##### 2. The Court Takes Notice of the Webpage (Ex. D).

Plaintiffs also request judicial notice of a screenshot of the "Compare Products" landing page on the 403bCompare website. Federal Rule of Evidence 201 requires the Court to take judicial notice when "a party requests it and the court is supplied with the necessary information." The fact that certain contents appeared on a webpage can constitute a fact that is "not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and is therefore judicially noticeable under Rule 201. Plaintiffs' request, which LICS does not oppose, is granted.

**B.     LICS's Requests (Dkt. No. 39)**

LICS requests judicial notice of 29 documents, including webpages, purported copies of plaintiffs' annuity policies, emails between the parties' counsel in this case, and dictionary definitions. These requests are resolved as follows.

### 1.     The Court Takes Notice of the Websites (Exs. A–L to Dkt. No. 38).

LICS first requests judicial notice of several pages from 403bCompare, including:

- The entries for "C" and "F" on the "Glossary" webpage (Exs. A, B),
- The "403(b) & 457(b) Fundamentals" webpage (Ex. C),
- The "Product Details" and "Fees and Charges" tabs on the "FIT Rewards Growth," "SecurePlus Elite," "SecurePlus Paramount 5," and "SecurePlus Platinum" listing pages (Exs. D–L), and
- The "Product Management" page.

Along with the URLs, LICS submitted undated PDF printouts of each page and (after plaintiffs challenged the sufficiency of the original submission) a supplemental declaration stating that the printouts reflect the contents of the webpages available at those URLs as of October 16, 2023. Based on these submissions, the Court grants LICS's request and takes judicial notice of the fact that on the specified date the indicated contents appeared on each of the identified webpages. This notice is limited to the fact that the listed webpages appeared as submitted. The Court cannot take notice of the accuracy of statements included on any of the pages.

### 2.     The Court Will Not Take Notice of the Annuity Policies or Quarterly Account Statements (Exs. M–Y).

LICS next requests judicial notice of each of the plaintiffs' LICS annuity policies. This request is denied. Although the complaint states that an "annuity is a contract" and alleges that the plaintiffs purchased annuities from LICS, the contracts themselves do not form the basis of plaintiffs' claims, nor does the complaint refer extensively to the actual policy *documents* (as opposed to the annuity products more generally). The policy documents are therefore not incorporated by reference into the complaint and there is no other basis for the Court to take notice of their contents at this stage. The request to take judicial notice of these documents is denied.

LICS also seeks judicial notice of two of the plaintiffs' quarterly statements, each of which is referenced once in the complaint. As with the contracts, while these statements are referenced in the complaint, they do not serve as the basis of plaintiffs' claims nor does the complaint refer to them extensively. The request to take notice of these statements is also denied.

### 3. The Court Will Not Take Notice of Emails Between Counsel (Ex. Z).

LICS next requests judicial notice of an email exchange between plaintiffs' counsel and LICS's counsel. LICS argues that this submission helps clarify the allegations of the complaint. Plaintiffs are correct that this email (which postdates the complaint) is not incorporated into the complaint or otherwise a proper subject of judicial notice. This request is denied.

### 4. The Court Takes Notice of the Dictionary Definitions (Exs. AA & AB).

LICS next seeks judicial notice of the definition of "fee" from two dictionaries. As plaintiffs point out, the meaning of "fee" is at the heart of the parties' dispute. The Court will take judicial notice of the fact that the specific editions of the two dictionaries that LICS has selected include the submitted definitions for "fee." But this notice is limited and does not give any legal weight to the submitted definitions or preclude the Court from considering other definitions.

### 5. The Court Takes Notice of the NAIC Brochure (Ex. AC).

Finally, LICS requests judicial notice of a brochure produced by the National Association of Insurance Commissioners entitled "Buyer's Guide for Deferred Annuities Fixed." Plaintiffs directly quote from this brochure in their complaint and cite the brochure with a "see" signal that provides the same URL that LICS provides in its request for judicial notice. But plaintiffs then argue that this document should not be judicially noticed because its significance and meaning are disputed. This argument fails. As discussed above, publicly available websites can be proper subjects of judicial notice. Plaintiffs are correct that the single reference to this document is not enough to incorporate the entire brochure into the complaint by reference. Incorporation would mean treating the document like the rest of the complaint and accepting any of its factual assertions as true. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). But the Court can still take notice of the existence and contents of this NAIC publication, even if this notice does not require accepting the truth or accuracy of its contents. Indeed, the complaint's "see" citation to

7

1  this brochure might itself be interpreted as a request that the Court take notice of this document.
2  LICS's request is therefore granted. As with the other websites, the Court takes notice of the fact
3  that this brochure is published on the NAIC website and that it says what it says but cannot
4  conclude from this that the brochure is accurate or that LICS's interpretation of it is correct.

*   *   *

In sum, plaintiffs' request for judicial notice is granted in full and LICS's request for judicial notice is granted in part and denied in part.

### IV.     Motion To Dismiss (Dkt. No. 37)

Plaintiffs bring a single claim against LICS for violation of California's Unfair Competition Law (UCL). The UCL authorizes courts to enjoin anyone who "engages, has engaged, or proposes to engage in unfair competition." Cal. Bus. & Prof. Code § 17203. "Unfair competition" is defined, as relevant here, to include "any unlawful, unfair or fraudulent business act or practice." *Id.* § 17200.

Plaintiffs assert that LICS has violated the "unlawful" prong of the UCL by charging fees for their annuity plans in violation of Sections 25101 and 25107 of the Education Code, and that this same conduct also violates the "unfair" prong of the UCL. Plaintiffs' claim under the unlawful prong is based on two classes of alleged violations. First, plaintiffs assert that annuity plan parameters like cap, participation, and spread rates are "fees," and that LICS violated the Sections 25101 and 25107 of the Education Code by applying these parameters to their plans without disclosing them. Second, two plaintiffs assert that they paid rider fees that LICS did not disclose on 403bCompare.com. These arguments are addressed in turn.

**A.     Plaintiffs Do Not State a Claim Based on the Undisclosed Cap, Participation, and Spread Rates.**

**1.     UCL Unlawful Prong**

Plaintiffs' main claim under the UCL's unlawful prong is based on the assertion that LICS has illegally charged fees for certain annuity plans. Plaintiffs argue that annuity plan parameters like cap, participation, and spread rates that are used to calculate the interest rates based on underlying indexes are "fees" that under Sections 25101 and 25107 cannot be charged without

first being disclosed on the 403bCompare.com website. The Court concludes, however, that parameters like caps, participation rates, and spreads are not "fees" within the meaning of Sections 25101(a)(3) and 25107.

Section 25101 requires vendors to disclose "all expenses paid directly or indirectly by retirement plan participants." Such expenses include "penalties for early withdrawals, declining or fixed withdrawal charges, surrender or deposit charges, management fees, and annual fees." Section 25107 then prohibits charging "fee[s]" that are not disclosed "pursuant to Section 25101." Neither section (nor any other portion of the relevant chapter of the Education Code) specifically defines "fee" or "expense" as used in these provisions.

Plaintiffs make three related arguments as to why cap, spread, and participation rates constitute fees. These arguments fail.

First, plaintiffs argue that cap, spread, and participation rates are fees because they are the mechanism by which LICS earns money from its customers, setting the rates at a level that "locks in" its desired level of earnings. But the fact that LICS sets the plan parameters at values that it hopes will ensure that it makes a profit does not itself make the parameters fees. After all, these parameters determine the amount of interest paid *to* the participants, not *by* the participants. Companies like LICS will of course be incentivized to determine interest rates in a way that allows them to make a profit while still remaining competitive. But plaintiffs' argument is untethered from the statutory text and the meaning of "fees" and "expenses," and has no logical limit. LICS could, for example, offer a plan that had no cap, no spread, and a 100% participation rate but that was linked to an index with a historically lower performance. Would the fact that LICS indexed a plan to, say, U.S. treasury bonds instead of the NASDAQ Composite Index also constitute a fee because it meant that LICS ultimately paid a lower interest rate than might be hypothetically possible? Certainly not. Ultimately, both the selected market index as well as the cap, spread, and/or participation rates used to calculate a plan's interest rate are arbitrary points of reference selected as a matter of contract. That LICS may set these parameters in a way it hopes will allow it to return a profit does not mean that the parameters themselves constitute fees or expenses.

9

Second, plaintiffs argue that cap, spread, and participation rates are fees because they reduce an investor's rate of return as compared to the relevant market index. This may be true. But an annuity is a different kind of product than a security or index fund. And as the complaint itself alleges, when a customer buys an indexed annuity, the provider is not simply investing their premiums directly into the specified index. To be certain, there may be opportunity costs associated with purchasing an indexed annuity that make such annuities less desirable investment vehicles than actual securities (although they might offer counterbalancing benefits, like protection against any loss of principal). Plaintiffs might even have an argument, depending on the cap, spread, and/or participation rates at issue, that referring to an annuity as "indexed" is misleading. But the mere fact that there are tradeoffs associated with LICS's annuities and that investing directly in the specified index could lead to better returns in a growth market does not mean that the parameters used to determine the annuities' interest rates constitute fees or expenses.

Finally, plaintiffs argue that cap, spread, and participation rates are fees because they directly affect the investor's rate of return. Maybe so. But the mere fact that these parameters are used to determine the interest rate paid to policyholders is not enough to make the rates "fees."

There may be strong policy arguments for requiring the ongoing disclosure of current rates. Parameters like cap, spread, and participation rates are a key feature of deferred indexed annuities, and it is hard to see how a customer could make an informed decision about purchasing a deferred indexed annuity without understanding what those rates were and how they were likely to change. But because the statutory text of Sections 25101 and 25107 does not impose such a requirement, plaintiffs' policy arguments must be directed to the California Legislature.

In sum, annuity plan parameters like cap, participation, or spread rates are not expenses or fees that are paid by participants. Because these parameters are not "fees" within the meaning of the statue, plaintiffs argument that LICS has violated Section 25107 by applying these parameters without disclosing them under Section 25101 fails. And without an underlying statutory violation, plaintiffs cannot state a claim under the UCL's unlawful prong.

### 2.   UCL Unfair Prong

Plaintiffs also assert a claim under the "unfair" prong of the UCL for the same conduct. Plaintiffs primarily argue that that the unfair prong claim should not be dismissed because statutory violations are sufficient to establish claims under both the unlawful and unfair prongs. Because the Court finds no statutory violation, this argument fails.

The complaint also briefly asserts that LICS's practice of "charging undisclosed and hefty fees" harms consumers as well as competition independently from the alleged statutory violation. But as the complaint itself alleges, annuities are contracts, and the purported "fees" are contract terms. *See* Compl. ¶ 73. The gist of the complaint is that the cap, participation, and spread rates are not properly disclosed as required by statute on 403bCompare.com. The complaint does not clearly allege that these rates—which are terms of the contracts annuity customers agree to—are not disclosed at all, either in the actual contract or elsewhere. Because the complaint does not clearly and plausibly allege that these rates are entirely undisclosed and does not, in the alternative, explain why the specific failure to disclose these rates on the 403bCompare website even if they are disclosed elsewhere violates the unfair prong of the UCL, plaintiffs have failed to adequately plead an unfair prong claim.

\*      \*      \*

For the foregoing reasons, plaintiffs' UCL claim based on LICS's failure to disclose cap, participation, and spread rates on 403bCompare.com is dismissed. This dismissal is without leave to amend as to the UCL's unlawful prong but with leave to amend as to the UCL's unfair prong.

### B.   Plaintiff Blisten Does Not State a Claim Based on Undisclosed Rider Fees.

Two of the plaintiffs also claim that they paid rider fees that LICS did not disclose on 403bCompare.com.

Plaintiff Blisten claims that he paid a rider fee in connection with the FIT Income Plus plan, which he claims was a plan that LICS never registered on 403bCompare.com. As currently formulated, Blisten's UCL claim challenges only LICS's imposition of this rider fee without first disclosing it; he does not challenge LICS's broader failure to register the FIT Income Plus plan.

11

By its text, Section 25107 applies only to *registered* plans. It provides in full: "A vendor may not charge a fee associated with a registered 403(b) product that is not disclosed, pursuant to Section 25101." The parties initially disagree as to whether the phrase "that is not disclosed" modifies the "fee" or the "product." LICS argues that "that is not disclosed" modifies only "product." *See* Motion, Dkt. No. 37, at 29 n.19. In the context of this statute, however, registration of a product necessarily involves its disclosure on 403bCompare.com, so there could never be a "registered 403(b) product that is not disclosed."

The better interpretation of the statutory language is that "that is not disclosed" modifies "fee," as plaintiffs contend. That does not end the inquiry, however, because the statutory text prohibits the charging of undisclosed fees associated only with *registered* products. According to Blisten's allegations, LICS never registered the FIT Income Plus plan at all. As a result, any rider fee associated with that plan is not "a fee associated with a registered 403(b) product," and charging a fee for that rider does not violate Section 25107.

Blisten therefore has not stated a claim under the UCL's unlawful prong based on the FIT Income Plus rider fee. His claim under the UCL's unfair prong is inadequately pleaded for the same reasons discussed above with respect to claims based on plan parameters.

Blisten's UCL claim is therefore dismissed. This dismissal is without leave to amend as to the UCL's unlawful prong but with leave to amend as to the UCL's unfair prong.

### C. Plaintiff Krimbow States a Claim Based on Undisclosed Rider Fees.

Plaintiff Krimbow claims that she paid for a "Guaranteed Lifetime Income Rider" in conjunction with LICS's SecurePlus Platinum plan. Unlike Blisten's plan, this plan was registered. Krimbow alleges that the plan's 403bCompare.com listing stated that the rider fee would range from 0.65% to 0.75% of the account balance, but that she was actually charged a fee of 0.90% for the rider.

The parties do not dispute that the SecurePlus Platinum plan was registered and listed on 403bCompare.com. And Krimbow clearly alleges that she incurred a fee for this rider that was higher than the one listed on the website. Unlike with the plan parameters, LICS does not argue that this fee does not fall within the statutory definition. Krimbow has thus adequately pleaded that

she was charged a fee associated with a registered 403(b) product that was not disclosed in violation of Section 25107. This suffices to state a claim under the UCL's unlawful prong.

LICS argues that Krimbow has failed to plead an injury because Krimbow does not allege that she used the 403bCompare website or that the higher rider fee was not listed in her contract. This argument misreads the statute. Under Section 25107, if a fee is not disclosed on 403bCompare.com, a vendor may not charge it. If Krimbow paid a fee that LICS was not entitled to charge, this is an economic injury that provides standing to pursue her UCL claim whether or not the fee was disclosed elsewhere.

LICS's motion to dismiss Krimbow's claim under the UCL's unlawful prong is therefore denied. And because a statutory violation can also serve as the basis for an unfair prong claim, LICS's motion to dismiss the unfair prong claim is also denied.

## V. Conclusion

For the reasons set forth above, plaintiffs' request for judicial notice is granted, LICS's request for judicial notice is granted in part, and LICS's motion to dismiss is granted in part and denied in part. Plaintiffs are granted leave to amend their dismissed claims under the UCL's unfair prong. An amended complaint, if plaintiffs choose to file one, will be due August 8, 2024

**IT IS SO ORDERED.**

Dated: July 17, 2024

P. Casey Pitts
United States District Judge

13