UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIELLE KRIMBOW,

Plaintiff,

v.

LIFE INSURANCE COMPANY OF THE SOUTHWEST,

Defendant.

Case No. 23-cv-04068-PCP

**ORDER RE: CLASS CERTIFICATION**

Re: Dkt. Nos. 108, 109, 110, 117, 121

In this action, plaintiff Danielle Krimbow asserts a single claim against defendant Life Insurance Company of the Southwest (LICS) under California's Unfair Competition Law. She alleges that LICS charged fees for certain add-on benefits to deferred indexed annuity plans that it offered to California public-school employees without disclosing such fees on 403bCompare.com as required by California Education Code § 25101(a)(3). Krimbow now moves to certify a class of similarly situated public employees who purchased LICS annuity products. For the reasons that follow, the motion is granted in part.

**BACKGROUND**

This case concerns "403(b) plans": "tax-sheltered annuity … program[s] under section 403(b) of the Internal Revenue Code … for employees of public schools, employees of certain tax-exempt organizations, and certain ministers." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 996 (9th Cir. 2010). As the Court has previously explained:

> An annuity plan is a contract, typically with an insurance company. The customer pays a premium at the outset and in exchange the company promises regular payments for a set period of time. The payments might end either on a fixed date or when the customer dies. In an immediate annuity, the payments start right away. In a deferred annuity, the payments start at a later date the customer picks. Until

> then, the customer can withdraw their upfront payment and close their account (though there might be a fee for doing so). And until the deferred payments start, the premiums paid to the insurance company by the customer accumulate interest.
>
> There are different ways to calculate the interest rate earned by a deferred annuity. For an "indexed" annuity, the annuity provider pays an interest rate that is tied to the performance of a market index like the S&P 500 or Dow Jones Industrial Average. The insurance company does not necessarily invest the customer's premiums in the specified index. Instead, the company simply promises to pay an interest rate that is determined by the index's performance. The interest rate is thus a matter of contract rather than a reflection of gains directly earned by investing the customers' premiums in the specified index.

*Hoffman v. Life Ins. Co. of the Sw.*, 740 F. Supp. 3d 918, 922 (N.D. Cal. 2024).

Prospective vendors of 403(b) annuity products in California are required by statute to register those products with the California State Teachers' Retirement Board, *see* Cal. Educ. Code § 25101, which "maintain[s] an impartial investment information bank" online at 403bCompare.com, *id.* § 25104. Vendors must also disclose specified information about any 403(b) product offered in California on that website. *Id.* § 25101(a). As relevant here, "prospective vendors shall provide … [a] disclosure of all expenses paid directly or indirectly by retirement plan participants, including, but not limited to, penalties for early withdrawals, declining or fixed withdrawal charges, surrender or deposit charges, management fees, and annual fees[.]" *Id.* § 25101(a)(3). "A vendor may not charge a fee associated with a registered 403(b) product that is not disclosed" on the website. *Id.* § 25107.

LICS issues life insurance and annuities across the country, including by offering 403(b) annuity plans to public-school employees in California. At issue in this case are two types of LICS "riders" providing enhancements to customers' deferred indexed annuity plans.

First, at the time of their annuity product purchase, a policyholder may elect to add a Guaranteed Life Income Rider (GLIR) that allows the policyholder to receive income withdrawals from the annuity policy for life, even after the value of the policy has been fully depleted. *See* Dkt. No. 111-2, at 29. The benefit comes at a cost: Policyholders must pay an additional fee consisting of a percentage of the year-end value of their policy contributions. *See id.* The charge percentage

for a particular policyholder is locked at the time that the policyholder purchases their annuity plan, but the percentage for new GLIR purchasers changes overtime. Dkt. No. 111-1 ¶ 2. The charge was 0.75% before May 2016, 0.80% from May 2016 to January 2019, and 0.90% after January 2019. *Id.* The applicable charge rates at the time policyholders purchased GLIR were disclosed in policyholders' contracts. *See, e.g.*, Dkt. No. 111-2, at 29. But LICS did not update the charge rate listed on 403bCompare.com after the May 2016 or January 2019 increases, so the website continued to list the 0.75% rate even after the 0.80% and 0.90% rates began to apply. *See* Dkt. No. 108-3, at 24:10–25:15.

Second, LICS's "rate booster" product offers more favorable interest-crediting strategies, like a higher cap on the interest rate a policyholder can receive. Dkt. No. 111-1 ¶ 5. In exchange, policyholders pay an additional annual fee of one percent of their policy value. *Id.* LICS began offering the product as an add-on to two existing policies held by putative class members: FIT Certain Income and FIT Rewards Growth. Both of those policies were discontinued for new customers in California by the time the "rate booster" rider became available. *Id.* ¶ 7. For that reason, LICS never added rate-booster fee information to the product pages for those two policies on 403bCompare.com. Instead, LICS notified existing policyholders of the optional rider by mail. *Id.* ¶ 6.

Krimbow is a public-school teacher in California who in September 2019 purchased a "SecurePlus Platinum" annuity issued by LICS. *See* Dkt. No. 111-2, at 11. When she purchased that annuity, Krimbow elected to add the GLIR. *See id.* at 29. The applicable charge rate for the rider was 0.90%, which LICS disclosed in her contract, but the charge rate listed on 403bCompare.com at the time of her purchase was 0.75%. *See id.*; Dkt. No. 108-3, at 24:10–25:15. Krimbow has attested that she did not visit the website before purchasing the rider. *See* Dkt. No. 111-5, at 12:7–10. Krimbow did not purchase a rate booster rider.

Krimbow and several other plaintiffs commenced this action against LICS in state court in 2023, asserting UCL claims based on various alleged violations of the Education Code. LICS removed the case to this Court and moved to dismiss for failure to state a claim. The Court granted the motion in part and denied it in part, allowing Krimbow alone to proceed with her claim that

LICS engaged in unfair and unlawful practices under the UCL by charging rider fees that were not disclosed on 403bCompare.com. *See Hoffman*, 740 F. Supp. 3d at 929.

Krimbow now moves to certify a class of similarly situated California public-school employees who purchased 403(b) annuity products from LICS from June 2019 to the present and who paid rider fees that were not disclosed on 403bCompare.com. The putative class includes policyholders who purchased the GLIR and the rate booster rider. Krimbow proposes to serve as the class's sole representative.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 23 governs class certification. The party seeking class certification must first satisfy the requirements of Rule 23(a) by demonstrating that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to making this showing, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Krimbow seeks certification under Rule 23(b)(3), which requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."

The party seeking class certification "must affirmatively demonstrate [its] compliance with Rule 23." *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1192 (9th Cir. 2024) (citation modified). Thus, plaintiffs "must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23, including ... the predominance requirement of Rule 23(b)(3)." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014).

## ANALYSIS

### I. Krimbow's motion for class certification is granted in part.

Krimbow seeks certification of a class consisting of:

> All public employees of all California local school districts, community college districts, county offices of education, and state employees of a state employer under the uniform state payroll system, excluding the California State University System, eligible to participate in an annuity contract and custodial account as described in Section 403(b) of the Internal Revenue Code of 1986 who, in the period between June 26, 2019 and continuing through the date the class list is prepared, were invested in an indexed annuity 403(b) product issued by Defendant and who paid rider fees that were not disclosed on 403bcompare.com.

As noted above, this class would sweep in purchasers of both the GLIR and the rate booster rider. Because Krimbow is typical only of public-school employees who purchased the former product, the Court certifies a class limited to public-school employees who purchased the GLIR.

#### A. Rule 23(a) Prerequisites

##### 1. Numerosity

Krimbow has demonstrated that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "[t]he Ninth Circuit has not offered a precise numerical standard[,] district courts generally hold ... 'that the numerosity requirement is usually satisfied where the class comprises 40 or more members, and generally not satisfied when the class comprises 21 or fewer members.'" *J.L. v. Cissna*, No. 18-CV-04914-NC, 2019 WL 415579, at *8 (N.D. Cal. Feb. 1, 2019) (quoting *Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, No. 12-cv-5080-CRB, 2013 WL 3802807, at *2 (N.D. Cal. July 17, 2013)). Here, LICS's own internal data suggests that there are several thousand members in the proposed class. *See* Dkt. No. 108-1 ¶ 5. LICS does not dispute that the proposed class satisfies the numerosity requirement.

##### 2. Commonality

Krimbow has also demonstrated commonality. "Commonality mandates there be a common question of law or fact among the class members where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1198 (9th Cir. 2024)

(citation modified). In other words, commonality exists where "the evidence establishes that a common question is capable of class-wide resolution." *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 863 (9th Cir. 2025). "To satisfy commonality, even a single common question is enough." *Small*, 122 F.4th at 1198 (citation modified) (quoting *Wal-Mart Stores*, 564 U.S. at 359). Here, every proposed class member's UCL claim turns on at least one common question: whether the California Education Code required LICS to list on 403bCompare.com the rider fee applicable at the time the policyholder purchased the rider, even where such fees were already disclosed in class members' contracts with LICS. The answer to that legal question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Again, LICS does not dispute that this requirement is satisfied.

**3. Typicality**

Krimbow has established that her "claims or defenses … are typical of the claims or defenses of" only part of the proposed the class. Fed. R. Civ. P. 23(a)(3). "Typicality focuses on the class representative's claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative aligns with the interests of the class." *Small*, 122 F.4th at 1201–02. "Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct." *Id.* at 1202. "Typicality is not satisfied … when a named plaintiff who proved h[er] own claim would not necessarily have proved anybody else's claim," including due to "unique defenses." *McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. 12–CV–04457, 2015 WL 4537957, at *10 (N.D. Cal. July 27, 2015) (citation modified).

Here, as LICS appears to concede, Krimbow's claim is typical of the claims of other proposed class members who purchased the GLIR. Krimbow "allege[s] the same or a similar injury" (i.e., payment of a higher rider fee than was listed on 403bCompare.com); she "allege[s] that this injury is a result of a course of conduct that is not unique to" her (i.e., LICS's failure to update the listed percentage fee for GLIR); and she "allege[s] that the injury follows from the course of conduct at the center of the class claims." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir.

2014).

The same is not true for proposed class members who purchased the rate booster rider. LICS required policyholders to elect or decline the GLIR at they time they purchased their annuity plan, and LICS listed an outdated percentage fee for the GLIR on 403bCompare.com at the time class members elected the rider. So Krimbow and other GLIR purchasers' injuries stem from the listing of an inaccurate fee on the website at the time of their annuity purchase. By contrast, class members who elected the rate booster rider did so after purchasing their annuity, and LICS never listed fee information for that rider on 403bCompare.com. Thus, unlike Krimbow, rate booster purchasers' injuries arise from LICS's failure to list *any* percentage fee for the rate booster on the website *after* their annuity purchase—a different injury flowing from a distinct course of conduct. *See id.* And LICS has a unique defense as to the rate booster purchasers' claims: It argues that the California Education Code did not require it to list fee information on 403bCompare.com for riders added to products that were no longer available to new customers. *Cf. Jacobson v. Metro. Life Ins. Co.*, 116 Cal. App. 5th 748, 762–63 (2025) (holding that the Education Code does not require an annuity seller to list fees for optional riders that are no longer available to prospective purchasers although the underlying annuity product is still offered), *as modified* (Dec. 4, 2025), *review denied* (Mar. 11, 2026). Because the claims of GLIR purchasers would not be subject to such a defense, Krimbow's success on her claim "would not necessarily … prove [rate booster purchasers'] claim." *McKinnon*, 2015 WL 4537957, at *10.

Krimbow suggests that "to the extent … that the Rate Booster claims are subject to certain defenses because they were associated with discontinued products, that issue can be handled through the creation of a permissive subclass." It is true that, where a subclass is used purely "to facilitate management of the class action," it is "unnecessary to evaluate [the subclass] … for commonality, numerosity, typicality, and adequacy of representation." *Am. Timber & Trading Co. v. First Nat. Bank of Oregon*, 690 F.2d 781, 786–87, n.5 (9th Cir. 1982); *see also Morel v. HNTB Corp.*, No. 22-CV-00408, 2025 WL 242084, at *5 (S.D. Cal. Jan. 17, 2025). But where a subclass is used to cure a failure to satisfy one of the Rule 23(a) prerequisites, the "subclass must independently meet the requirements of Rule 23 for the maintenance of a class action." *Aldapa v.*

*Fowler Packing Co., Inc.*, 323 F.R.D. 316, 326 (E.D. Cal. 2018) (quoting *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981)). For the reasons already discussed, Krimbow—the only remaining named plaintiff and proposed class representative—would not be typical of the rate booster subclass, and she has not suggested any other individual who could serve as a representative for the subclass.

Because Krimbow's claims are not typical of the claims of rate booster purchasers, certification of a class including such purchasers would be improper under Rule 23(a). The Court therefore assesses Krimbow's satisfaction of the final Rule 23(a) prerequisite only with respect to a putative class of GLIR purchasers.

**4. Adequacy**

Krimbow has established that she "will fairly and adequately protect the interests" of proposed class members who elected the GLIR. Fed. R. Civ. P. 23(a)(4).

"The adequacy inquiry is addressed by answering two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? If either answer is no, the representative is inadequate." *Small*, 122 F.4th at 1202 (citation modified). To satisfy these criteria, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).

As to proposed class counsel, Krimbow asserts that counsel has no conflicts with the interests of the proposed class and is competent to vigorously prosecute the action on behalf of the class. LICS does not argue otherwise.

As to the proposed class representative, Krimbow asserts that she is a member of the class, has no conflict with its interests, and will vigorously prosecute this action on behalf of the class. LICS nevertheless contends that Krimbow is an inadequate class representative for two reasons.

First, LICS argues that Krimbow "has an adjudicated history of dishonesty" that destroys her credibility and thus her ability to adequately represent the proposed class. LICS's argument is based on deposition testimony from Krimbow admitting that she once received public reproval

from the California Commission on Teacher Credentialing for allegedly submitting incorrect timesheets and later failing to disclose that reproval to another employer. But that does not make Krimbow an inadequate representative. As an initial matter, even the Commission on Teaching Credentialing does not appear to treat the reproval as disqualifying or otherwise indicative of significant untruthfulness. Krimbow retained her teaching credentials and continues to work as a public-school teacher in California. In any event, Krimbow's alleged (but unconfirmed) misstatement of her hours worked as a teacher is hardly related to the issue in this case, which is whether LICS unlawfully charged fees for her annuity plan benefits. Generally, "a district court should find inadequacy 'only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud.'" *See Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 583 (N.D. Cal. 2018) (quoting *Harris v. Vector Mktg. Corp.*, 753 F.Supp.2d 996, 1015 (N.D. Cal. 2010)). Neither circumstance is present here.

Second, LICS argues that Krimbow "has displayed a remarkable lack of engagement and understanding of this case" because she stated in her deposition that she was unfamiliar with 403bCompare.com and misstated the source of authority requiring LICS to disclose fees. But "[i]t is not necessary that a representative be intimately familiar with *every* factual and legal issue in the case." *DuFour v. Be LLC*, 291 F.R.D. 413, 419 (N.D. Cal. 2013) (emphasis added). Here, Krimbow has displayed an understanding of the core facts and legal issues underlying this action. She explained, for example, that LICS was required to disclose fees charged on its annuity plans sold to California public-school employees and that LICS allegedly failed to disclose the fees for certain plan benefits in the required manner. Krimbow is thus far from being so "startlingly unfamiliar with the case" as to justify a finding of inadequacy. *Id.*

Accordingly, excepting rate booster purchasers, the proposed class and its proposed representative satisfy Rule 23(a).

**B. Rule 23(b)(3)**

Rule 23(b)(3) requires that the common questions of law or fact identified above "predominate over any questions affecting only individual members, and that a class action is

United States District Court
Northern District of California

superior to other available methods for fairly and efficiently adjudicating the controversy." Krimbow has satisfied this requirement.

Rule 23(b)(3)'s predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. "The commonality and predominance inquiries overlap." *White*, 104 F.4th at 1191. After separating questions common to the legal claims of the class from those that "present individualized issues," courts "analyze whether the common questions predominate over the individual questions." *DZ Rsrv.*, 96 F.4th at 1233. In essence, this inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Here, the common question identified above—that is, whether LICS was required by statute to update the product pages on 403bCompare.com to list the applicable fee at the time a policyholder elected the GLIR—predominates. It is undisputed that LICS listed an inaccurate fee on the website when every class member elected the GLIR, so there are no individualized factual disputes as to liability. Because the parties have already stipulated to the proper measure of restitution and calculated the applicable amounts, no individualized damages issues will arise. Thus, answering the common question will be determinative of all class members' claims. And given the low value of individual class members' claims, an apparent lack of other similar suits against LICS, and the ability to prove all claims with common evidence, a class action is clearly superior. *See* Fed. R. Civ. P. 23(A)–(D); *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

LICS argues that individualized issues will predominate the adjudication of this action because LICS expects to raise two individualized defenses. "When defendants opposing class certification raise a legal defense that may defeat [predominance], the district court cannot assume its validity." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1184 (9th Cir. 2015). Instead, the Court must "make a threshold determination on the legal merits." *Id.* And "if an alleged defense is invalid as a matter of law, the defense will not give rise to individual issues and thus cannot be a valid basis for denying class certification." *Id.* That is the case as to both of LICS's expected

United States District Court
Northern District of California

defenses.

LICS first argues that the Court must assess whether each class member actually "visited [403bCompare.com] and had any resulting misapprehension about any fee amount" before electing the GLIR. As the Court explained in a prior order, however, whether an individual visited 403bCompare.com does not bear on LICS's statutory liability, as § 25107 of the Education Code prohibits the charging of a fee that is not disclosed on the website whether or not the purchaser relied upon the website. *Hoffman*, 740 F. Supp. 3d at 929. LICS suggests that "even if there exists an underlying statutory violation," individual class members' lack of reliance on the website bars their recovery as a matter of equity. That argument runs headlong into LICS's own stipulation that "(in the event of liability) the appropriate measure of restitution for any instance in which a rider fee listed on the [w]ebsite differed from what was charged would be the difference between the rider fee as listed on [w]ebsite versus what was charged," regardless of class members' actual reliance on the website. Dkt. No. 108-4, at 3 (letter from LICS's counsel proposing such a stipulation); *see also* Dkt. No. 108-5, at 2 (email from LICS's counsel "confirming [that the parties] reached agreement on the restitution … proposal").

LICS next argues that the claims of class members who purchased their annuity products before the start of the class period are time-barred and that individualized questions about when each class member purchased their plan and rider will therefore predominate. The argument is based on LICS's mistaken view that the claim here is premised on a violation of California Education Code § 25101(a)(3), which requires vendors like LICS to disclose fees on 403(b) annuity products at the time such products are purchased. The UCL claim here is premised on a violation of § 25107, not § 25101(a)(3). Section § 25107 provides that it is unlawful to "charge a fee" that is not disclosed as required by § 25101(a)(3). *See* Cal. Educ. Code § 25107. In other words, the predicate violations underlying the class UCL claims occurred at the time LICS *charged* the fees at issue, not at the time the rider was elected. Every class member was, by definition, charged during the class period and therefore has a timely claim.

* * *

Accordingly, as to proposed class members who purchased the GLIR, Krimbow has

established that she satisfies all the prerequisites of Rule 23(a) and the requirements of Rule 23(b)(3). Accordingly, the Court certifies the following class:

> All public employees of all California local school districts, community college districts, county offices of education, and state employees of a state employer under the uniform state payroll system, excluding the California State University System, eligible to participate in an annuity contract and custodial account as described in Section 403(b) of the Internal Revenue Code of 1986 who, in the period between June 26, 2019 and continuing through the date the class list is prepared, were invested in an indexed annuity 403(b) product issued by Defendant and who paid fees for the Guaranteed Life Income Rider (or "Guaranteed Lifetime Withdrawal Benefit Rider") that were not disclosed on 403bcompare.com.

Krimbow shall represent the class, and Krimbow's counsel shall serve as class counsel.

## II. The Court denies the parties' consolidated administrative sealing motion.

In connection with the briefing on Krimbow's motion for class certification, the parties filed several administrative motions to seal. *See* Dkt. Nos. 109, 110, and 117. Pursuant to the Court's order, Dkt. No. 119, the parties filed a joint motion consolidating their sealing requests, *see* Dkt. No. 121. The parties' consolidated motion abandons certain requests to seal information in Krimbow's class-certification motion and supporting exhibits that LICS had designated confidential. The parties are ordered to file unredacted versions of these documents to the public docket within 14 days of this order.

The remaining requests all pertain to the California Commission on Teacher Credentialing's issuance of a public reproval of Krimbow in 2024. As the parties acknowledge, the "compelling reasons standard" applies. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Two of the three documents subject to sealing requests are the parties' briefs on class certification, which should be sealed "[o]nly in rare circumstances." Civ. L.R. 79-5(e). Krimbow has not demonstrated that this is one of those rare circumstances. She argues that disclosure of this material "would cause [her] to risk public embarrassment, humiliation, and threaten her reputation and future employment[.]" But "[t]he mere fact that the production of records may lead to a litigant's embarrassment" does not justify sealing under the compelling-reasons standard, *Kamakana*, 446 F.3d at 1179, nor do Krimbow's "conclusory assertions" of

future employment-related harm, *see Portable Power, Inc. v. Energizer Holdings, Inc.*, No. 23-CV-02091-PCP, 2025 WL 4110870, at *4 (N.D. Cal. Dec. 29, 2025). And the fact of Krimbow's public reproval is (as the name implies) already a matter of public record, so the disclosure of information about that reproval in this action is unlikely to cause significant additional harm to her employment prospects. *Cf. Kamakana*, 447 F.3d at 1184 (noting that sealing is inappropriate as to information that is "already publicly available"). Krimbow also argues that "the public has little interest in the information" because it does not concern the merits of this action. But "in Rule 23(b)(3) cases, where class members may opt out," putative class members have an interest in knowing background information about class representatives "so that they may assess whether the representatives adequately represent them and whether they wish to participate in the action[.]" *Barbara v. Trump*, 790 F. Supp. 3d 80, 96 (D.N.H.) (citation modified), *aff'd*, No. 25-365, 2026 WL 1870543 (U.S. June 30, 2026). Accordingly, the Court denies the parties' consolidated sealing motion and orders the parties to file unredacted copies of the documents subject to that motion to the public docket within 14 days of this order.

## CONCLUSION

For the foregoing reasons, Krimbow's motion for class certification (Dkt. No. 108) is GRANTED in part and DENIED in part; the parties' consolidated sealing motion (Dkt. No. 121) is DENIED; and the remaining sealing motions filed in connection with the class-certification briefing (Dkt. Nos. 109, 110, and 117) are DENIED as moot.

**IT IS SO ORDERED.**

Dated: July 15, 2026

P. Casey Pitts
United States District Judge